And our final arguing case this morning is number 16-1416 Intellectual Ventures v. Compass Bank. Mr. Babcock again. Good morning again, your honors. I have the privilege of working with you twice today. May it please the court. This is a claim construction case. Three distinct claim construction errors, each of which alone requires reversal. The first claim construction error is with the term selecting. This is selecting an access rule. The second error is selecting the rule based on the contents of the packet. What is the contents of the packet? And then the third is the word implementing. With respect to the first of those, do you agree that Rubin shows three different strategies and that it also shows combining those strategies? It doesn't show three different rules? No, no, no. I didn't ask you that. I said three different strategies and it shows combining different strategies. It shows three different strategies. It doesn't ever say that you can put them together and select from one. But it does show putting them together and using them together, right? No, I don't believe so. I believe it shows three distinct strategies. I think if you look at Rubin, that it pretty clearly shows that it contemplates using the strategies together. What page is Rubin at? I think the I think the arguments below your honors were that Rubin applied a single rule. That's what the record shows. Look at one. Eighty three. Eleven. Eighty three, for example, shows Rubin suggesting combining these strategies. It says on page 1183 in the left column, it says combined with the applet blocker and the C.A.F.E. blocker. It's surprisingly complex and subtle piece of code, which shows combining the two strategies. I don't know, your honor. I'm relying upon what the evidence showed below. The argument below wasn't that Rubin selected one of three rules. You're not answering my question. Doesn't Rubin pretty clearly on its face show combining more than one strategy together? It may show combining strategies. It doesn't show selecting an access rule. I don't know. Access rules are different than strategies. Blocking strategies are not the same as access rules. Well, but the board seems to think that that's exactly why it was anticipated or obvious over Rubin. Your honor, the reason with all respect, I believe the reason that it found that Rubin anticipates is because the board said that you don't need to select one from a plurality. As long as you apply a given rule, you've satisfied the claim, meaning the claim term selected. I don't read the board's opinion that way. I read the board's opinion as saying, if you look at 26, where it's talking at the bottom of the page about Rubin, it talks about three blocking strategies and each one is applied depending on the information. I think what they're saying is you've got three strategies and Rubin picks the right one for blocking under a particular circumstance. That's not my reading of the opinion, your honor. My reading of the opinion is that the board said that. If my reading of the opinion were right, you'd lose, right? If Rubin selects an access rule from a plurality, yes, we would lose under our claim construction. The problem here is, your honor, that the board said our construction is wrong. That selection does not require selecting from a plurality. It only requires deciding whether or not to apply a single rule. That's not the ordinary meaning of selecting and it's not consistent with the specification in this patent. This patent uses selecting throughout and it never uses selecting for purposes of what the firewall does at the top, which is applying a rule. It only uses selecting in one circumstance. Are you arguing that a strategy is not a rule? A blocking strategy is not a rule. A rule is... Why not? We'll have to go back and look at what the patent says, but that wasn't an issue below. We didn't have to define rule or blocking strategy. The point is you have to still select one from many. You picked one strategy from the three. There's no evidence that Rubin did that, your honor. The panel didn't reach that conclusion that Rubin selected one from a plurality. That's not an alternative holding. They didn't say Rubin under our construction applies a single rule. I think you're reading the board's opinion differently than I am. That's a problem. It's a dangerous thing for me to do, your honor. That's a bad position to be in. Maybe you should change your argument a little. Well, your honor, I think there's three issues here, selecting, contents of the packet, and implementing. I do believe the arguments below, and we look at the record below, were that selecting required only applying a given rule. I think it's unequivocal how the board construed the rule. Well, the board made it very clear that selecting does not require selecting one from a plurality. I've selected this glass for drinking. Is that a problem? How many are up there? Just this one. If you selected whether to drink, if you have a single card. I selected whether to drink, and I selected the glass to drink from. That's not an option. If you wanted to drink, what were your other options, your honor? That you didn't make a choice. If you want to drink, what are your choices? Well, you're assuming selecting implies a choice. The ordinary meaning of selecting implies a choice. We have the dictionary definition that the board put in the dictionary definition, and it says to choose one from plurality. Normally, the normal meaning of selecting is if I have a plurality, I select one. If I'm going to salute the flag, I don't select which American flag in this courtroom to salute. There's only one. I'm not making a selection. So we start with the ordinary meaning, but I understand that this is ordinary meaning, but you also have to do this construction lattice specification. And there's no use of selecting or select in the specification that is consistent with only applying one. How much flexibility should we give them since they have the broadest reasonable interpretation authority? It's a de novo rule. It's a de novo issue, your honor. You don't give them any deference with respect to what is the plain construction of the word selecting, particularly when here they adopt a definition that's inconsistent with the ordinary meaning and it's inconsistent with the specification. Now, I don't disagree that it's the broadest possible definition. It's possible the way you want to use it, the way the board wanted to use it, to say selecting means choosing one. But you think it's unreasonable. It's unreasonable, and it's not in light of the specification. Those are two requirements. It has to be reasonable in light of the specification. In addition, if you look at the claim itself, the claim says selecting an access rule, then what's the next thing you do? You implement the rule. Well, if the claim allows choosing not to apply a given rule, how do you implement that? You select a rule. The board says, well, that just means choosing whether or not to apply a rule. What do you want to say about implementing? The ordinary meaning of implementing is to start something new. The example I used, I wore this tie at the board, and I said, if I walked into this building, the PTO, and there was a sign that said, no blue ties allowed, and the board kicked me out of the hearing room, they'd be applying a rule. They'd be applying a preexisting rule. They wouldn't be implementing a rule. The implementing is when you implement a policy, implement something, implement a new strategy. So implementing in this context, if you look at how the patent is put together. They're not implementing a rule to exclude you? They're applying a rule. If they say, we're going to create a new rule, we're going to create a new rule, and we're going to implement that rule today, that's implementing. Implementing means to create a new rule and to apply it for the first time. Did you waive this argument? Pardon me? Was this argument waived? No. You raised it for the first time at oral argument? That's not a waiver, Your Honor. We've seen many times where in response to arguments made by the petitioner in the reply brief, the only opportunity that the patent owner has to address those new arguments and replies is either through a surreply or an oral argument. And this court has, in fact, on at least a couple of occasions, said that's permissible for the board to consider issues that are raised and discussed. And this is in response to the board's questioning. The board asked me specifically, what do you mean by implementing, Mr. Babcock? And I have ten pages of transcript about what implementing means, and it's all in the joint appendix. So I don't believe that's a waiver, Your Honor. I think there the party's fully engaged in the meaning of this term and were able to explain to the board what implementing means. If you look at how the patent uses the term implementing, it never uses implementing with respect to the existing rules in the firewall. You have in the Figure 1, you have the old firewall, which applies preloaded rules. And then if a preloaded rule doesn't apply, doesn't match, this is where the invention is. The invention is the proxy. You go down from the proxy, you go out, you select, select a new rule from a plurality, and you implement that rule. You take that rule, you load it into the system to now update the firewall. The board and COMPASS argue that this patent is just over firewalls. If you have a firewall, you have some rules, you apply a rule, and you block a packet, you're done. The patent recognizes that that's old. Firewalls were old. This claim wasn't directed to old firewalls. It was directed to a new technology. It's not a complicated patent. You read through it and you understand when the board, when the patent uses the word. You make a very good point, Mr. Babcock. It is not a complicated patent. You're using that against me, Your Honor. I assume that you are an experienced patent counsel, patent lawyer. I assume that at some time you probably did patent applications, patent drafting. In my younger years, Your Honor. In the two cases you brought to us this morning, they turn to some extent, either entirely or largely, on problems of claim construction. I put to you this question. Do you think in these two cases, in these three or four instances, clearer claim drafting could have prevented your having to be up here and our having to listen to you? Is that possible? Well, I understand your sentiment, Your Honor, and I do believe that it... It's not a sentiment. I asked you a question. Would it have been possible to have drafted these claims more clearly? Of course. I think every... patentee, the claim drafter, for failing to have drafted clearly. That is to say, my background is more in contract law and real property law, and we have doctrines that say you lose if you haven't said clearly enough what you think you want. I understand, Your Honor. There's some Latin phrases. You've heard them all. Why shouldn't we come at you with that same thought? Well, if there's true ambiguity, I guess I wouldn't have a fundamental problem with that type of doctrine. First of all, I don't know if it exists. I don't know that that's a patent law doctrine. But secondly, I don't think that's the situation here. I don't think we have a situation where the claims are ambiguous. I think that the... Here, the board's charge in your review is to look de novo at what is the ordinary meaning of these terms, what's the broadest reasonable interpretation in line with the spec. And here, I don't think it's reasonable, regardless of whether I could have said selecting one from many. If you look at the specification, and you use every time it says selecting, you use the word select or selecting, it's always choosing one from many. You look at the dictionary, and it says choose one from many. I don't think it's appropriate to say the patent owner, the patent drafter, was required to put in a much more complicated definition for the ordinary English word of select. When I select, I choose one from a plurality. Are you making the argument that Compass Bank's claims against you or arguments against you are frivolous? They have no foundation because your claims are so clear? Is that what you're saying? I can't say that, Your Honor, because the PTAB agreed with them. And the PTAB is smart judges, so they're not frivolous. But I don't think this is a situation where I have some extra burden because I'm the patent owner. You drafted them. I understand, and they had to be clear. There's no 112.2 problem here. I don't think there's a problem with what selecting means. It doesn't seem to me to be a complicated issue. I think here, if you have that rule, then the petitioner is always going to say, I don't know what the claim means. So therefore, it's up to the patent owner. He has the burden to make it clear. So that kind of hindsight analysis, which is in every patent dispute, you go back. We do know that patent applicants employ ambiguous language deliberately to avoid rigorous review and to be able to claim later on a broader claim perhaps than is clear on the paper. Perhaps, Your Honor, but not in this case. Selecting an access rule, I don't know how much more simple and clear that can be. You select an access rule. If you have three chairs, you select which chair to sit in. You have one. It's not a selection. You apply. You apply the rule. That's not the ordinary meeting. Okay. Well, I think we're out of time. We'll restore your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. Please, the court. My name is Jason Jackson, representing Compass Banks, the appellees in this case. Very briefly, as you know, the PTAB found Claim 1 impotent on two grounds, anticipation by Rubin and obviousness in view of Norman and Rubin. The panel should affirm on both grounds. One of the issues the panel, I think, has been talking about today is the breadth of the claim. Claim 1 is just a pretty broad claim, and I think that's borne out by the fact that in view of the prior art, it never should have issued. If you look at what the inventors thought they contributed to the state of the art, looking at the contents of multiple packets, I think Rubin and Norman clearly show that that predated the patent, that that was in the prior art. And it's also telling here, Your Honors, in this case, that there are really only three terms, important terms in this claim, the one claim, contents, selecting, and implementing. And intellectual ventures are seeking to read limitations in using all three terms, and that is to save the claim over the prior art. I think this panel can very easily affirm on the basis of the Norman and Rubin combination. Intellectual ventures never argued in the papers below that the combination of Norman and Rubin fails to disclose the selecting and implementing terms. They simply didn't argue that with respect to the Norman reference. They challenged the combination of Norman and Rubin on three grounds. Contents of the packet, the references are not combinable, and that Rubin was not prior art. Well, they dropped the last two grounds on appeal, so the only issue this panel is left with regarding the combination is the contents term. And I think that this court can affirm the board under either party's construction of contents. First, I.V. does not dispute that the combination of Norman and Rubin discloses selecting contents under the petitioner's claim construction. As to I.V.'s claim construction, header and payload, substantial evidence exists showing that Norman and Rubin satisfy contents under their claim construction. So I think it's a very straightforward path, Your Honors, to affirming the board on the basis of the combination of Norman and Rubin. Well, you made the argument, if I understand it, petitioner proposes that the broadest reasonable construction of, quote, contents of the packet, unquote, is the contents of, quote, the header and or payload of the packet, unquote. And the board adopted that. Yes, Your Honor. That's a fatally defective construction. I'll tell you why. And slash or is fatally ambiguous because you can't have it both ways, and slash or. It's either and or it's or. Those are two very different meanings. So a statement that the contents of the header and slash or payload is fatally ambiguous. What are we to do with that? Your Honor, I would respectfully disagree. I've seen claims in other cases that have had and or language in their claims first. Second, I think that is the construction that encompasses three ways that packets are chosen, excuse me, access rules are selected in this patent, by looking at headers, by looking at payloads, and by looking at both or a combination of headers and payloads. I think the claim can be read very consistently. As? As. And or or. Which? Both. So one of the issues here is what is contents? Well, it can't be both. What it means, Your Honor, is that a rule, if it's header and payload, information can be taken from the header and the payload to select a rule. You may have meant the header or payload or both. Is that what you meant? I would agree that that's an equivalent. But that's not what you said and that's not what the Board said. Well, the Board found persuasive the two embodiments of the specification that expressly talk about the access control proxy selecting a rule based on both the header and the payload. They also said equivalently selecting a rule based on a combination of the header and payload. And so that and, header and payload in our construction encompasses those embodiments. You don't think we should rule it fatally defective? No, Your Honor, I do not. Continuing with my overview, Your Honors, I think it's very straightforward. The Board can affirm on Norman and Rubin. The Board can also affirm on the basis of Rubin alone. They argued contents for Rubin and I think they also, very vaguely, did argue selecting. To be clear, we're not arguing that they waived arguing selecting with respect to the Rubin reference. Again, under the Board's construction of contents, they don't dispute that Rubin looks at multiple packet payloads. Even under IV's proposed construction of header and payload, substantial evidence exists to support the Board's conclusion there as well. And that's because in the case of Rubin, as well as in Norman, those references disclose not only looking at payloads, but looking at packet headers to perform the necessary work to reassemble packets, put them in the correct order and to reassemble packet fragments. Without those steps, the payloads simply don't make sense. Substantial evidence supports the Board's conclusion as they talk about in the final written decision. That's the basis for the header and payload where they held that Rubin anticipates and Norman and Rubin invalidate even in view of IV's proposed construction. To refer to a couple of the points that counsel made that I'd like to address, first, regarding selecting, there are absolutely embodiments in the specification that we point out that only reference one access rule. The first you'll see is the summary of the invention, bottom of column one, start of column two. There's a reference to an embodiment that selects an access rule. Additionally, at JA44, at column two, lines 34 through 38, and 47 through 51, these sites are in our papers, there are embodiments that simply disclose selecting a rule. Now, it is true, Your Honor, and we've talked about this at the Board and in the papers, there are embodiments that say selecting one rule of many. Here's the fundamental problem with that argument. The inventors clearly had the words. They had the lexicon to say selecting one from many. They also had the lexicon to import other limitations into the claim, a proxy, which the oral argument counsel suggested was a limitation on the claim, dynamically loading rules, new rules. It's true that there are embodiments that contain all of these limitations, but that's the problem. The inventors had the lexicon. Those words simply don't appear in the claim. It's a very broad claim, and that's why we're here today. That's why Ivey has asserted this patent against a number of banks, including the banks represented in this proceeding. As to the waiver argument, we do believe that they waived, again, argument implementing below. There's nothing in their expert report. There's nothing in their papers. If you look at the patent owner preliminary response, they only discuss one term, contents of the packet. They don't even discuss selecting. They don't discuss implementing. There's nothing about it in the patent owner full response either. To your previous point, Your Honors, Rubin does absolutely talk about combining its blocking strategies. That's at JA 1183 and also at JA 90. That's discussed where Rubin suggests combining blocking strategies. And I know we can argue about is selecting a rule, is indicating a rule. I think if you step back and look at all the embodiments in this patent, it uses a couple of terms equivalently, indicating a rule, selecting a rule. It's all the same thing, Your Honors. These embodiments talk about picking an access rule. There's really no magic to selecting. And I would note for this panel that- Well, the problem is selecting one of one, isn't it? In an actual venturer's conception of this case, yes. But, Your Honor, I think your analogy with a drinking glass is perfect, perhaps another. If you have- I could have improved it by pointing out that there are other drinking glasses up here, but I can't reach them, and besides which, it wouldn't have been nice for me to take his drink. Now, is that still selecting? Yes, and in fact, your choice there, Your Honor, was to drink or to die of dehydration. You're absolutely making a choice. Your choosing is pertinent. Another good analogy is if you post an application for a job. If one person shows up and she's qualified for the job, you hire that person. That's absolutely making a selection. You're selecting a candidate. Sometimes one shows up. Do we have to reach that question, though? Do we? I mean, at 27 and 28 of the Board's opinion, it says Rubin describes three types of blocking strategies, and then it says each blocking strategy is applied based on information in the payloads, and Rubin does describe selecting an access rule based on the payloads. So it's selecting one of the three strategies. Yes, I would agree, Your Honor. I would also like to point out, on the one hand, the Board found that Rubin and Norman, individually in the combination, select headers and payloads. Again, Ivy's construction. But we don't have to rely entirely on reassembling packets that may be fragmented or come out of order. If you look at the patent owner response, Intellectual Ventures makes very clear that every embodiment in this patent, every one of them, looks at headers and payloads. The reason being the packets first come through a firewall that inspects only header information. So every embodiment in this patent, they tell us, looks at headers and payloads. That supports their client construction, of course. But you'll also note that in Norman and Rubin, both of those systems clearly describe a conventional firewall that also looks at packet headers. So under their conception of the patent, Rubin and Norman also necessarily look at headers and payloads. Again, without relying on talking about segments and fragments and what have you. I know, Your Honor, unless this panel has any further questions, we will. No questions. Thank you, Mr. Jackson. Thank you, Your Honor. Just three final points. I think that selecting the glasses is a great example. And, Your Honor, if you chose not to drink, that's not selecting a glass. That's selecting whether to drink. The claim doesn't say select whether to apply a rule. It says select a rule. And then you have to implement the rule. If it's select whether to apply a rule, I totally get it. But that's not what the claim says. The claim says selecting a rule. I want to clarify a misstatement. I said if this court finds that Rubin does, in fact, select an access rule from a plurality under our proposed claim instruction, we lose. We lose on that point. We lose on that limitation. There's two other limitations that we've argued that are independent. And those also provide a reason for this court to reverse. We've talked about selecting. We've talked about implementing. Contents of the packet. I think this is probably the most complicated of the three. I would refer to our briefs. On page 30 of our brief, we have a really nice Venn diagram. The reason this is a little more complicated is because this is a where-in clause that was added by amendment over the rejection by the examiner. I do think and or is fatally defective because it's fatally ambiguous. But it's just wrong. When the claim said originally, it said selecting based upon the contents of the payload of the packet. And the examiner said, that's too broad. But what you can do is you can select based on the contents of the packet. That's narrower. The only way contents of the packet can be narrower than contents of the payload of the packet is if it includes something else. The claim defines what the something else is. Claim limitation A says the packet contains a header and a payload. So contents of the packet is already defined as both. It was claim 15. It was a dependent claim. And it narrowed the claim by saying contents of the packet. And that contents of the packet had to be narrower. In fact, we looked at claim 26. Claim 26 said contents of two payloads. And the examiner said that's not patentable. What is patentable is contents of two packets. So I would encourage you to examine this limitation. Not as the board. The board said it's an additional limitation. Look at what the board said. They said you have contents of the payload of the packet received in A. And now we have another limitation. Contents of the packets received by two other packets. That's not what this is. This is a where in clause. It says the selection is made based upon the contents of the payload of the packet. Where in? That selection is made based on the contents of the packet. The only way that claim makes sense under the patent law, under 112 paragraph 4, is if contents of the packet is narrower than contents of the payload of the packet. It means it must include the header. Thank you, Mr. Rapp. Thank you, your honors. Thank you, counsel. The case is submitted. That concludes our session for today. All rise. The honorable court is adjourned until tomorrow morning at 7 o'clock.